UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARY P. JENSEN, ) | |
|             ) | |
|     Plaintiff, ) | |
|             ) | |
| v.          ) | No. 06-CV-68-TCK-SAJ |
|             ) | |
| BOARD OF COUNTY ) | |
| COMMISSIONERS OF WASHINGTON ) | |
| COUNTY, et al., ) | |
|             ) | |
|     Defendants. ) | |

## OPINION AND ORDER

Before the Court are Defendant Lt. James Abraham's Motion for Summary Judgment (Doc. 53); Defendant Sheriff Patrick J. Ballard's Motion for Summary Judgment (Doc. 52); Defendant Board of County Commissioners of Washington County's Motion for Summary Judgment (Doc. 51); and Plaintiff's Motion for Summary Judgment (Doc. 55).

**I.   Factual Background**

On February 10, 2005, Plaintiff was arrested for a violation of the following Oklahoma law:

> A. It shall be unlawful for any person in possession of a valid concealed handgun license issued pursuant to the provisions of the Oklahoma Self-Defense Act, Section 1290.1 et seq. of this title, to carry any concealed handgun into any of the following places:
>
> 1. Any structure, building, or office space which is owned or leased by a city, town, county, state, or federal governmental authority for the purpose of conducting business with the public;

Okla. Stat. tit. 21, § 1277(A)(1) ("§ 1277(A)(1)"). Relevant to this case, the statute contains the following exception:

> E. The provisions of this section shall not apply to any peace officer or to any person authorized by law to carry a pistol in the course of employment. Private investigators with a firearms authorization shall be exempt from this section when acting in the

1

course and scope of employment.

Okla. Stat. tit. 21, § 1277(E) ("§ 1277(E)"). The facts leading to Plaintiff's arrest are largely undisputed, and the parties have filed cross motions for summary judgment.

Plaintiff is a licensed private investigator. On June 23, 2004, Plaintiff's wife, Marilyn Jensen ("Mrs. Jensen"), filed suit in Tulsa County District Court against James Martin ("Martin") to recover damages resulting from a car accident between Mrs. Jensen and Martin. Mrs. Jensen was represented in that lawsuit by attorney Mark Darrah ("Darrah"). On February 10, 2005, at approximately 8:45 a.m., Plaintiff entered the Washington County District Courthouse (the "Courthouse") to check property records of Martin. Prior to going through the metal detector at the Courthouse, security guard Jason Wilkie ("Wilkie") asked Plaintiff to remove all metal objects from his pockets. Plaintiff removed some items, including keys and loose change. Wilkie then asked Plaintiff if he had anything else in his pockets. At this point, Plaintiff "reached down and tapped [his] pocket," realized he was carrying his pistol, and said to Wilkie "[uh]-oh, I have my pistol in the right front pocket." (Jensen Dep., Ex. 7 to Def. Abraham's Mot. for Summ. J., at 7:19-8:1.) The weapon Plaintiff was carrying was a loaded semi-automatic .380 caliber pistol.

Wilkie did not allow Plaintiff to proceed and immediately contacted deputies at the Washington County Sheriff's Office ("Sheriff's Office"). Deputies quickly arrived on the scene, including Lieutenant James Abraham ("Abraham"). Wilkie informed the deputies that Plaintiff had a weapon in his right front pocket. Abraham approached Plaintiff and removed the pistol from Plaintiff's person. Abraham requested Plaintiff's identification, and Plaintiff provided him with (1) a CLEET Armed Security Guard and Private Investigator License, (2) an Oklahoma Concealed Weapon License; and (3) an Oklahoma Driver License. (*See* Identification Documents, Ex. C-1 to

Pl.'s Resp. to Defs.' Mots. for Summ. J.)  Abraham then asked Plaintiff why he was at the Courthouse.[1]  After checking Plaintiff's identification and hearing his reason for being at the Courthouse, Abraham informed Plaintiff that he was under arrest, placed him in handcuffs, and escorted him to the Sheriff's Office.  The time that elapsed between Wilkie's contacting the deputies and Plaintiff's arrest was no longer than five minutes.

Plaintiff was booked into the Sheriff's Office jail at 9:08 a.m.  On the same date, at a time after Plaintiff's arrest, Abraham filed a Probable Cause Affidavit for Arrest Without Warrant ("Probable Cause Affidavit"), setting forth the facts that led to Plaintiff's arrest.  (Probable Cause Affidavit for Arrest Without Warrant, Ex. C. to Pl.'s Resp. to Defs.' Mots. for Summ. J.)  The "offense committed/anticipated charges" listed in the Probable Cause Affidavit is a violation of § 1277(A)(1), which, as set forth above, prohibits the carrying of concealed handguns in a courthouse. Also on the same date, a judicial officer found that Abraham's affidavit "contain[ed] sufficient facts showing probable cause for the person's arrest existed at the time of the arrest."  (*Id.* at 3.)  Plaintiff was arraigned at approximately 1:00 p.m. and was released on his own recognizance at approximately 1:48 p.m.  The following day, February 11, 2005, Washington County District Attorney Frederick S. Esser ("Esser") filed an Information charging Plaintiff with violation of § 1277(A)(1).  (Information, Ex. D. to Pl.'s Resp. to Defs.' Mots. for Summ. J.)  The charges were subsequently dismissed.

On February 1, 2006, Plaintiff filed this lawsuit alleging the following eight "counts":  (1) deprivation of Plaintiff's civil rights in violation of 42 U.S.C. § 1983; (2) intentional infliction of emotional distress ("IIED"); (3) negligence; (4) gross negligence; (5) violation of 76 O.S. § 1; (6)

---

[1] Plaintiff's response to this question is discussed in detail below.

agency, joint venture, and joint and several liability; (7) punitive damages; and (8) Oklahoma Governmental Tort Claims Act.[2] The lawsuit was filed against (1) Abraham; (2) Washington County Sheriff Patrick J. Ballard ("Ballard"); (3) the Board of County Commissioners of Washington County ("Board"); (4) Wilkie; (5) Glenn Security Service, Wilkie's employer; and (6) Esser. Defendant Esser was dismissed by stipulation of the parties on June 30, 2006. Defendants Wilkie and Glenn Security Service were dismissed by stipulation of the parties on September 19, 2007. The remaining Defendants – Abraham, Ballard, and the Board – have filed motions for summary judgment as to all claims.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in his complaint but must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

---

[2] Of the eight "counts" in the Complaint, Counts 5-8 are not independent causes of action and need not be addressed by the Court as such. Instead, they are merely statements of rights or legal principles.

**III.     Section 1983 Claims**

Section 1983 is not itself a source of substantive rights but instead provides a method for vindicating federal rights elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Gallegos v. City and Cty. of Denver*, 984 F.2d 358, 362 (10th Cir. 1993). Therefore, the "first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. In Plaintiff's Complaint, he alleged violation of his Fifth and Fourteenth Amendment rights:

> As a result of the conduct of defendants . . . , the plaintiff was deprived of the Fifth Amendment right to be protected against deprivation of life, liberty, and property without due process of law, the right to be secure against unreasonable searches and seizures as guaranteed to plaintiffs [sic] under the Fourteenth Amendment . . . and of plaintiffs' right not to be deprived of life, liberty, or property without due process of law and to be accorded the equal protection of the laws as guaranteed to plaintiffs [sic] under the Fourteenth Amendment . . . .

(Compl. ¶ 28.) Plaintiff's subsequent briefs do not offer any legal argument, citation to relevant authority, or further clarification of the constitutional basis for his § 1983 claims. However, Plaintiff's arguments focus exclusively on the alleged unlawfulness of Plaintiff's arrest and seizure by Abraham on February 10, 2005. Defendants therefore addressed the alleged constitutional violation as one arising under the Fourth Amendment. (*See, e.g.*, Def. Abraham's Mot. for Summ. J. 10-11 ("[T]he only constitutional amendment applicable to Plaintiff's claim would be the Fourth Amendment.").) The Court agrees that Plaintiff's claim is properly addressed under the Fourth Amendment because the Fourth Amendment is specifically tailored to govern claims of unlawful arrest and seizure. *See Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996) (stating, in context of allegedly unlawful seizure, that the Fourth Amendment's probable cause requirement "was tailored explicitly for the criminal justice system, and its balance between individual and public interests

5

always has been thought to define the process that is due for seizures of persons or property in criminal cases, including the detention of suspects pending trial") (quotations omitted). Because the Fourth Amendment is more specific than the "Fourteenth Amendment's general substantive and procedural due process guarantees," the Fourteenth Amendment affords a plaintiff "no more protection than the right to be free from unreasonable seizure." *Id.* Therefore, the Court will decide Plaintiff's claim as one arising under the Fourth Amendment and need not address the more general Fourteenth Amendment. *See id; see also Wilder v. Turner*, 490 F.3d 810, 812 (10th Cir. 2007) (addressing claim that officer lacked probable cause to arrest individual for driving under the influence under Fourth Amendment principles).[3]

### A.     Abraham

Plaintiff contends his arrest by Abraham resulted in an unconstitutional seizure in violation of his constitutional rights. (*See* Compl. ¶ 17; Pl.'s Resp. to Defs.' Mots. for Summ. J. 8.) Abraham asserts that he is entitled to qualified immunity because the undisputed facts demonstrate that Abraham had probable cause to arrest Plaintiff for a violation of § 1277(A)(1).[4]

---

[3] Any claims arising under the Fifth Amendment fail because the Fifth Amendment's protections extend only to federal actors, and Plaintiff's claims relate solely to state actors. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm'n*, 483 U.S. 522, 542 n.21 (1987) (explaining that Fifth Amendment applies to federal actions and Fourteenth Amendment applies to state actions); *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) ("From the earliest interpretations of this amendment, courts have agreed that the Fifth Amendment protects against actions by the federal government.").

[4] Although not clear from the Complaint, Abraham is necessarily being sued in his individual capacity because, as a deputy sheriff, he does not have "final policymaking authority" under Oklahoma law. *See* Okla. Stat. tit. 19, § 547 (stating that the sheriff of each county "shall be responsible for the official acts of the undersheriff and deputy sheriffs"); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (holding that official capacity suits are only proper if the municipal official has "final policymaking authority" as determined by state law).

"Qualified immunity shields public officials from § 1983 liability if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1467 (quotations omitted). Once a defendant raises the defense of qualified immunity, the plaintiff must meet a heavy two-part burden. *Martinez v. Carr*, 479 F.3d 1292, 1294 (10th Cir. 2007). "First, the plaintiff must demonstrate that the defendant violated one of his or her constitutional or statutory rights. Second, the plaintiff must show that the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Id.* at 1295.

To demonstrate a violation of constitutional rights in the specific context of a warrantless arrest, the Tenth Circuit has stated that "the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff." *Wilder*, 490 F.3d at 813; *Latta v. Keryte*, 118 F.3d 693, 698 (10th Cir. 1997) (explaining that arrests are the "most intrusive of Fourth Amendment seizures" and are "reasonable only if supported by probable cause"); *Pino*, 75 F.3d at 1467 ("[A] Fourth Amendment seizure is reasonable if it is based on 'probable cause.'"). "Probable cause to arrest exists if, the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense." *Wilder*, 490 F.3d at 813; *see also Latta*, 118 F.3d at 699 ("In determining whether probable cause exists, we look to the circumstances as they would have appeared to a prudent, cautious, trained police officer.") (quotation omitted). "Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity." *Wilder*, 490 F.3d at 813. Probable cause is determined "from the totality of the circumstances taking into account both inculpatory as well as exculpatory evidence." *Id.*

7

Plaintiff concedes that, but for the exception in § 1277(E), his action of carrying a concealed handgun into the Courthouse violated Oklahoma law. Plaintiff contends, however, that his arrest violated his constitutional rights because Abraham knew or should have known Plaintiff qualified for the exception. It is undisputed that Abraham checked Plaintiff's identification prior to arrest and that Abraham was therefore aware Plaintiff was a "[p]rivate investigator[] with a firearms authorization." *See* Okla. Stat. tit. 21, § 1277(E). However, there is a second aspect of the exception, which is that the private investigator be "acting in the course and scope of employment." *See id.* Abraham asked Plaintiff, prior to Plaintiff's arrest, why Plaintiff was at the Courthouse. According to Abraham's affidavit prepared for this litigation, Plaintiff told Abraham that he was at the Courthouse "to check records regarding whether a particular person involved in a previous accident with his wife owned any property in the County." (Abraham Aff., Ex. 3 to Def. Abraham's Mot. for Summ. J., at ¶ 20.) Plaintiff has pointed the Court to no evidence or testimony disputing these statements by Abraham. In fact, Plaintiff cites to Abraham's Probable Cause Affidavit in support of his contention that Abraham "knew at the time of processing that [Plaintiff] was at the Courthouse to check records on an individual involved in an accident with [Mrs. Jensen] and that [Plaintiff] was . . . exempt." (*See* Pl.'s Resp. to Defs.' Mots. for Summ. J. 6 (citing Exhibit C, which is Probable Cause Affidavit); *see also* Pl.'s Mot. for Summ. J. 4 (same).) Abraham's statement in the Probable Cause Affidavit is nearly identical to Abraham's affidavit: "Jensen stated that he was on Washington County Courthouse property to check records regarding whether a particular person involved in a previous accident with his wife owned any property in this county." (Probable Cause Affidavit, Ex. C. to Pl.'s Resp. to Defs.' Mots. for Summ. J.) Thus, what Abraham knew at the time of Plaintiff's arrest is not in dispute. The issue presented is a legal one – whether this knowledge

8

was sufficient to provide a "prudent, cautious, trained" deputy with probable cause to arrest for a violation of § 1277(A)(1). *See Latta*, 118 F.3d at 699.

With respect to this legal question, Plaintiff argues that "it matters not the least whether [Plaintiff] was contractually employed by an attorney or that he was going to the Courthouse on his own [because] he was clearly on a valid investigative mission." (Pl.'s Resp. to Defs.' Mots. for Summ. J. 12.) Without significant explanation, Plaintiff cites the following Oklahoma law defining a "Private Investigator" in support of his argument:

> "Private investigator" means a person who is self-employed, or contracts with, or is employed by an investigative agency for the purpose of conducting a private investigation and reporting the results to the employer or client of the employer relating to:
> a. potential or pending litigation, civil, or criminal,
> . . .
> d. other lawful investigations . . . .

Okla. Stat. tit. 59, § 1750.2(4)(a) & (d). In contrast, Defendant argues that Abraham was justified in believing Plaintiff was at the Courthouse for purely personal reasons and was not acting in the scope of employment. Alternatively, Defendants argue that Abraham's actions were reasonable in light of a security policy passed by the Board in 2002 (the "Policy"), which "restrict[ed]" possession of firearms and other weapons in the Washington County Courthouse to law enforcement officers only." (Aff. of Comm'r Gary Deckard, Ex. 1 to Def. Abraham's Mot. for Summ. J. ¶ 5.) However, the record is clear that Plaintiff was arrested for a violation of § 1277(A)(1) and not for violation of the Policy. Because, as explained below, the Court finds Abraham's actions were supported by probable cause based on the probability of violation of Oklahoma law, the Court finds it unnecessary to address the legal question of whether an arrest or seizure based on the Policy would result in a

9

constitutional violation.[5]

In determining whether Abraham had probable cause to arrest, the Court must determine whether the "facts and circumstances within [Abraham's] knowledge [were] sufficient to justify a prudent officer in believing [Plaintiff] committed or [was] committing an offense" – namely, a violation of § 1277(A)(1). *See Wilder*, 490 F.3d at 813. This requires analysis of whether a prudent police officer would have believed Plaintiff qualified for the exception because he was acting in the course and scope of employment. The Court found no Oklahoma case interpreting the phrase "course and scope of employment" as specifically used in the § 1277(E) exception. In general, an act is within the course of employment if:

> (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, *and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account*.

*Roring v. Hoggard*, 326 P.2d 812, 813 (Okla. 1958) (emphasis added).[6] Based on the undisputed

---

[5] Plaintiff argues the Policy results in a constitutional violation because it is contrary to § 1277(E). Defendants counter that, as a property owner, the Board is authorized to pass a firearms policy for the Courthouse that is more restrictive than § 1277(E) pursuant to Title 21, Section 1290.22 of the Oklahoma Statutes, which provides: "[N]othing contained in any provision of the Oklahoma Self-Defense Act . . . shall be construed to limit . . . in any manner the existing rights of any person, property owner, tenant, employer, or business entity to control the possession of weapons on any property owned or controlled by the person or business entity." The Court declines to address this question of state law because it is not necessary to dispose of this case.

[6] Although these principles typically inform the question of whether an employer can be held liable for the employee's acts, which is not at issue here, the Oklahoma legislature chose to use this legal term of art in drafting the § 1277(E) exception. The Court therefore finds it appropriate to apply case law construing this term of art in interpreting § 1277(E).

record, the Court finds that the facts were sufficient to justify a prudent officer in believing that, although Plaintiff was a private investigator, Plaintiff was at the Courthouse for a personal matter and was not acting "in the course and scope of employment." *See* Okla. Stat. tit. 21, § 1277(E). Plaintiff's statement to Abraham that he was there "to check records regarding whether a person involved in a previous accident with his wife owned any property in the County," (*see* Abraham Aff., Ex. 3 to Def. Abraham's Mot. for Summ. J., at ¶ 20), gave Abraham reason to believe that Plaintiff's business at the Courthouse "ar[ose] wholly from some external, independent, and personal motive on the part of [Plaintiff] to do the act upon his own account." *See Roring*, 326 P.2d at 813. By mentioning his wife and failing to offer further information about a specific client or employer, Plaintiff indicated to Abraham that he had a purely "personal motive" for checking the property records rather than an intent to further an employer's interest. *See id.* The Court finds that a reasonably prudent officer could have formed the belief, based on the information presented, that Plaintiff did not qualify for the § 1277(E) exception and was therefore in violation of § 1277(A)(1).

The Court rejects Plaintiff's contention that, anytime a private investigator is doing something that could be considered investigative work, he is acting in the "course and scope of employment" regardless of whether he is doing so for his own personal benefit or for the benefit of a client who has hired him. First, this is a flawed legal premise under Oklahoma law. As explained above, "scope of employment" requires not only that the act "be something fairly and naturally incident to the business" but also that the act be "done while the servant was engaged upon the master's business." *See Roring*, 326 P.2d at 813. Therefore, a person is not acting in the "scope of employment" just because that person is using skills consistent with his profession. Second, Plaintiff's citation to the definition of "private investigator" under Oklahoma law is not helpful to

11

his position.  The definition provides that a private investigator "report[s] the results to the employer."  Okla. Stat. tit. 59, § 1750.2(4).  Based on the information known to Abraham, it was reasonable for Abraham to conclude that Plaintiff had no "employer" to whom he would report the results of his investigation of Martin's property records and that he was instead on a purely personal mission.

To be clear, there may be a question of fact as to whether Plaintiff was *actually* acting in the scope of employment.  Abraham has submitted testimony of Darrah, Mrs. Jensen's attorney in the civil lawsuit, wherein Darrah states he did not hire Plaintiff to go the Courthouse on February 10, 2005 and investigate property records.  (*See* Def. Abraham's Mot. for Summ. J. 18 & Ex. 9.)  Plaintiff contends, in contrast, that "I was working for Mr. Mark Darrah, who was representing my wife in a – another lawsuit." (Jensen Dep., Ex. N to Pl.'s Resp. to Defs.' Mots. for Summ. J., at 15:16-23.)  However, any potential factual dispute on this point is not material because the issue is not whether Plaintiff actually violated the law.  The issue is whether Abraham had a reasonable belief that there existed a "probability of criminal activity."  *Wilder*, 490 F.3d at 813.  Based on the facts known to Abraham, a reasonably prudent officer could have concluded that there was at least a "probability" that Plaintiff engaged in criminal activity by carrying a loaded firearm into the Courthouse.  Whether Plaintiff's action actually fits the § 1277(E) exception plays no role in the probable cause analysis, nor does the fact that the charges were ultimately dismissed.  *See Pino*, 75 F.3d at 1469 ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released.") (quotation omitted); *Summers v. State of Utah*, 927 F.2d 1165, 1166-67 (10th Cir. 1991) ("Since probable cause for a warrantless arrest is determined in terms of the circumstances

confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal.") (citations omitted).

Because the Court finds Abraham had probable cause to arrest Plaintiff for a violation of § 1277(A)(1), Abraham is entitled to qualified immunity. *See Wilder*, 490 F.3d at 813 (holding that defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff). Abraham's motion for summary judgment is granted as to the § 1983 claim.[7]

### B. Ballard

Plaintiff's allegation against Sheriff Ballard is that he "failed in his duties to satisfactorily educate and train his deputies as to the applicable provisions of [§ 1277(A)(1)]." (Compl. ¶ 20; *see also* Pl.'s Resp. to Defs.' Mots. for Summ. J. 8.) Plaintiff does not specify whether Ballard is sued in his individual or official capacity, and the Court assumes Plaintiff is suing Ballard in both capacities. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 783 (10th Cir. 1993) (assuming, without deciding, that plaintiff asserted claims in both capacities where plaintiff's complaint was

---

[7] Plaintiff's claim against Abraham is limited to Plaintiff's arrest. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 8 (stating that Plaintiff was "arrested" by Abraham and that such "arrest" was wrongful because Abraham "knew that the Plaintiff was a Licensed Private Investigator with a firearms authorization"). Even if Plaintiff claimed some wrongdoing by Abraham in continuing to detain him after more extensive interviewing at the Sheriff's Office, the Court finds no constitutional violation in the continued detention. Following Plaintiff's interrogation, Abraham continued to have probable cause to believe Plaintiff did not qualify for the exception. (*See* Jensen Dep., Ex. 8 to Def. Abraham's Mot. for Summ. J., at 173:3-174:4 (testifying that he told investigators during interview that he was at Courthouse on his own and not at request of wife's attorney); Incident Report, Ex. Q to Pl.'s Resp. to Defs.' Mot. for Summ. J. ("We asked Mr. Jensen if he was geting [sic] the information at the request of Mrs. Jensen [sic] attorney or for himself, [sic] Mr. Jensen said he did it on his own.").)

unclear).[8]

Ballard was not present and had no personal involvement with any events occurring on February 10, 2005. Instead, any theory of personal liability against Ballard is based on a form of supervisory liability. "A supervisor who is sued in his or her personal capacity is entitled to invoke the defense of qualified immunity." *Hinton*, 997 F.2d at 783. "The first prong of this doctrine requires the plaintiff, in response to a motion for summary judgment by the supervisor, to establish that the supervisor's conduct violated the law." *Id.* Here, as in the Tenth Circuit's decision in *Hinton*, Plaintiff does not complain that Ballard "acted independently against him"; rather, he complains only that Ballard's supervision resulted in Abraham "acting unconstitutionally against him." *Id.* This Court has already held that Abraham's conduct was not unconstitutional. It follows that Ballard did not act unconstitutionally in failing to prevent Abraham's conduct. *See id.* Accordingly, any claims asserted against Ballard in his personal capacity are barred on the grounds of qualified immunity, and Ballard is entitled to summary judgment. *See id.*

Any claim against Ballard in his official capacity is simply another way of pleading an action against the entity he represents. As explained above, Plaintiff's theory of liability is that Ballard, acting in his official capacity, failed to properly train his officers in understanding § 1277(A)(1). However, the first element of any "failure to train" claim under § 1983 is that "a municipal employee committed a constitutional violation." *See Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998). Here, the Court has found no constitutional violation and therefore does not

---

[8] Unlike Abraham, Ballard is a "final policymaker" for the Sheriff's Office, *see* Okla. Stat. tit. 19, § 547, and may be sued in his official capacity.

find any official liability on the part of the Sheriff's Office based on failure to train.[9]

### C. Board

Similarly, Plaintiff alleges that Defendant Board "failed to supervise the activities of . . . [Glenn Security Service] and the Sheriff of Washington County in that [the Board] failed to determine that these agencies were appropriately trained in the provisions of [§ 1277(A)(1)]." (Compl. ¶ 22.) For the same reasons explained above with respect to Ballard, the lack of an underlying constitutional violation bars any "failure to train" claim asserted against the Board. *See Myers*, 151 F.3d at 1318 (first element of municipal liability is that a municipal employee committed a constitutional violation).[10]

## IV. State Law Claims

In his Complaint, Plaintiff asserted state law claims for IIED, negligence, and gross negligence. Thereafter, Plaintiff submitted no evidence or argument in support of these claims, and such claims are therefore abandoned and confessed. In addition, the Court accepts Defendants' arguments that they are immune from Plaintiff's tort claims under the Oklahoma Governmental Tort

---

[9] Plaintiff further alleges that Ballard committed a constitutional violation because he "had no provisions in place for memorializing Judicial Orders." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 8.) Plaintiff is referring to a failure to memorialize the Policy passed by the Board in 2002. This theory of liability against Ballard fails because the Court found no underlying constitutional violation by Abraham. Further, as explained above, the Court finds no reason to address arguments related to the Policy because it did not form the basis of Plaintiff's arrest.

[10] Plaintiff further alleges that the Board is subject to municipal liability because it "implemented a security policy that prohibited possession of firearms in the Courthouse unless carried by law enforcement officers" and that the "Board knew or should have known that they were not authorized to implement such a security policy" as it applied to private investigators. (*See* Pl.'s Resp. to Defs.' Mots. for Summ. J. 8-9.) This theory of municipal liability also fails because the Court found no underlying constitutional violation by Abraham. In addition, the Policy did not form the basis of Plaintiff's arrest.

15

Claims Act ("OGTCA"), which provides that "the state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A) & (B).

Defendant Lt. James Abraham's Motion for Summary Judgment (Doc. 53) is GRANTED; Defendant Sheriff Patrick J. Ballard's Motion for Summary Judgment (Doc. 52) is GRANTED; Defendant Board of County Commissioners of Washington County's Motion for Summary Judgment (Doc. 51) is GRANTED; and Plaintiff's Motion for Summary Judgment (Doc. 55) is DENIED.

**IT IS SO ORDERED this 2nd day of OCTOBER, 2007.**

*Terence Kern*

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**